HARDY, Judge.
This is a suit in which plaintiff claims damages for the death of her husband, who was fatally injured in a highway accident allegedly caused by the negligence of defendant’s assured. From a judgment in favor of plaintiff in the principal sum of $12,500 defendant has appealed.
On the morning of September 12, 1956, plaintiff’s husband, Arthur Joe Finn, was driving a 1953 GMC truck and trailer, heavily loaded with logs, in an easterly direction on Louisiana highway 117. At a *285 point on the highway, near the foot of a slight grade and just east of a gradual curve of the highway, a truck and lowboy trailer unit owned by defendant’s assured, the S. T. Wall Construction Company and driven by an employee, Ardell Smith, had been parked by the driver in such manner as to completely block the highway. A description of the manner in which this parking was effected and the physical appearance is important to an understanding of the factual circumstances involved. The Wall truck, facing westerly, was parked parallel to the extreme south edge of the highway and the lowboy extended at a right angle northerly across the highway, the rear end thereof being against an embankment on the north side of the highway. The lowboy was carrying a tractor which had been loaded toward the rear with the front wheels resting upon an elevated platform which extended just above the rear tandem, dual wheels of the lowboy. At the time of the collision Ardell Smith had just released the chain which bound the tractor to the lowboy, had taken his place on the driver’s seat of the tractor and was just preparing to move the vehicle off of the lowboy and onto the highway embankment. Just beyond the lowboy a gravel truck had been parked by its driver, H. T. Matthews, another employee of the Wall Construction Company, upon the highway along the extreme northern side thereof.
Decedent’s truck, descending the grade from the west and proceeding easterly along the highway, rounded a curve of the highway and crashed into the lowboy at a point at or near the rear of the tractor. Some 45 feet, more or less, from the point of impact decedent, evidently perceiving the impossibility of avoiding a crash, had thrown himself from his truck and from this fall he sustained injuries which resulted in his death within a period of about an hour. The peeled logs with which decedent’s truck had been loaded were scattered fan wise over the highway in the rear of the trailer.
There were no eyewitnesses to the accident. Despite the fact that both Smith and Matthews were present at the time, neither of them saw the collision and apparently had no advance warning of the crash. Matthews, standing in the vicinity of the tractor, sustained a rather serious injury to his right hand. The tractor was knocked partially off of the lowboy by the force of the collision.
The surface of Highway 117 was asphalt or macadam, in the direction from which Finn was proceeding, up to a point approximately 270 feet west of the point of impact, at which time the surface changed to gravel. Some 1,100 feet west of the point of collision the highway begins a two percent down-grade to the site of the accident. About 900 feet to the west of the highway begins a right-hand curve to the south which continues to a point approximately 400 feet from the scene of the accident where the curve reverses to the north.
One factual issue of controlling importance is involved in the determination of this case, that is, at what distance could and should Finn have been able to perceive the complete blocking of the highway, by the exercise of reasonable care.
On this important point the testimony of the witnesses is conflicting. The testimony is supplemented by the introduction of a plan and profile of the highway in the vicinity of the accident and a number of photographs, many of which were taken on the day of or the day following the accident, which were introduced by defendant. The plot of the highway and the photographs have been most helpful to the court in attempting to reconstruct the physical conditions.
We have had no difficulty in reaching the conclusion that the action of the employees of defendant’s assured, Wall Construction Company, constituted gross and inexcusable negligence. No attempt *286 was made to warn approaching traffic against the complete and dangerous blocking of the highway by the vehicles which extended completely across the entire width of the highway. This action cannot be too severely condemned. In this respect the facts here involved are quite similar to those which were considered by this court in Cox v. Louisiana Department of Highways, La.App., 25 So.2d 824, and Taylor v. Fidelity & Casualty Co., La.App., 55 So.2d 307.
It follows that the decision of this case must rest upon a resolution of the charges of contributory negligence which have been leveled against decedent.
As we appreciate the scene, after study of the testimony and examination of the plan of the highway, we are convinced that Finn could have observed the truck cab parked on his right-hand side of the highway, and possibly the tractor and the gravel truck at his extreme left-hand side of the highway, for a considerable distance as he approached. However, it cannot be concluded upon the basis of this finding that Finn was guilty of any negligence in continuing his progress at a reasonable speed in the face of these observations. It was established, without contradiction, that a ■considerable amount of highway work was in progress along this stretch of the highway, and the presence of trucks and tractors in connection with such operations was to be expected. The testimony shows that Wall Construction Company was engaged in the performance of a contract in connection with work upon the shoulders of the highway in the immediate vicinity of the accident, particularly in resodding these areas.
While it is urged on behalf of defendant that the lowboy which blocked the center of the road was easily visible for a distance of as much as 1,000 feet, we think the evidence fails to substantiate this contention. The center of the lowboy was of the usual construction, that is, a flat bed which clears a level surface by only a few inches at the bottom and at the top is approximately “knee-high” above the surface of the highway. The very nature of this construction conclusively indicates the difficulty of perception from any great distance, and the yellow color of the frame of the lowboy would serve to blend with the gravel highway in such manner as to make observation of its nature exceedingly difficult.
As we have observed, there was serious conflict in the testimony of the witnesses as to the distance from which the obstruction caused by the lowboy could have reasonably been perceived. In this connection counsel for defendant has earnestly contended that the photographs constitute convincing evidence on this point and demonstrate the fact that the obstruction could have been observed as far up the highway, in the direction from which Finn was approaching, as the crest of the grade, a distance of some 1,000 feet, more or less. We cannot so find, and, on the contrary, we think the photographs, the plan of the survey, and the preponderance of the testimony, serve to establish the fact that a clear view of the obstruction caused by the lowboy could not reasonably have been obtained beyond a point approximately 300 feet removed from the obstruction. This finding is predicated not alone upon the conviction that the grade and the curve contributed to concealment of the obstruction, but also upon the nature of the obstruction itself. Even if it be conceded, arguendo, that the lowboy itself was susceptible of observation at a greater distance, we think the photographs introduced in evidence clearly indicate, because of the location of the obstruction beyond the curve, that an approaching motorist could not have determined that the highway was completely blocked across its entire width until he actually began to enter into the reverse curve. One other factor enters into our study of this issue. There is some respectable amount of testimony as to the *287 existence before and at the time of the accident, along the northerly embankment and shoulder of the road, of a growth of small pines. One witness testified he cut down a young pine sapling six to eight feet in height and dragged it over onto the highway to shade the body of Finn. Another witness testified that in the course of the operation of a bulldozer removing the logs with which the Finn truck had been loaded and pulling them onto the north shoulder of the highway, some small pines had been knocked down in the process. While this testimony is disputed and its effect is minimized, we think reference to the photographs showing what appears to be some pine top debris on the north shoulder of the road has seme corroborating effect.
After careful study of all the evidence we have concluded that the exercise of reasonable care, and observador» by Finn would not necessarily have disclosed the presence of the lowboy blocking the highway at a distance beyond the beginning of the gravel portion of the highway which, as we have above stated, was some 270 feet west of the point of impact. The testimony justifies the conclusion that the heavily loaded logging truck-trailer unit driven by Finn at a speed somewhere between 25 and 35 miles per hour could not be brought to a stop within this distance.
In this connection we refer to the testimony of defendant’s witness, Ardell Smith, the driver of the truck lowboy unit. Smith testified that from his position on top of the tractor, which was partially on the rear elevated portion of the lowboy, he first saw the approach of the Finn truck as it was just coming over the top of the hill, and that the last time he noticed the Finn truck it was about 250 feet from him and tflooked like he was stopping”. The witness testified that the noise of the approaching truck sounded like the driver was “gearing it down.” This deduction was certainly reasonable and would indicate that Finn was taking due precaution to have his truck under control during its descent of the grade. There was nothing in the nature of the approach of the truck, its operation or speed, which caused the witness, Smith, any concern, and for that reason he did not continue to watch its approach and did not know of his danger until the impact-knocked the tractor, upon which he was sitting, partially off of the lowboy.
After thorough consideration we are of the opinion that defendant has failed to sustain the burden of proof in establishing negligence or contributory negligence on the part of plaintiff’s decedent. At best, such a conclusion would be predicated only upon possibilities and is lacking in that certainty which must be required.
Before this court counsel for plaintiff has filed an answer to the appeal praying for an increase in the amount of the judgment to $15,000. We find no possible basis for such an increase. The testimony in connection with plaintiff’s alleged damages is so sketchy as to be almost non-existent, but no contention as to the quantum has been made in connection with this appeal by counsel for defendant.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.